Case number 251428, Franklin Garrison v. Bryan Morrison. Argument not to exceed 15 minutes per side. Mr. Schultz, you may proceed for the appellant. Thank you, and good morning, your honors, and may it please the court. Assistant Attorney General Jared Schultz on behalf of the respondent. I'd like to reserve three minutes for rebuttal. Every claim has a specific lens through which it must be viewed, and the proper lens matters. In this habeas action, in review of a state court decision, Mr. Garrison, in order to obtain relief on his murder and arson convictions, must not only show that he has met the correct appropriate constitutional standard, but he also must overcome the statutory limitations in EDPA that severely restrict a federal court's power to grant habeas relief to a state prisoner. Neither of Mr. Garrison's claims get past the first layer of review, let alone the second. The correct constitutional standards are very familiar to this court, and they are also very deferential. Under Jackson, only if no reasonable juror, viewing the evidence in the light most favorable to the prosecution, could vote to convict is he entitled to relief on a sufficiency claim. And under Strickland, only if he can overcome the strong presumption that counsel acted reasonably is he entitled to relief on his ineffective assistance claim. Given the record here, with the significant evidence, be it circumstantial or not, linking him to the crimes, and the lack of evidence showing that anything that counsel did was anything but reasonable and appropriate, he cannot meet his burden of establishing entitlement to relief on his claims. Just with respect to the ineffective assistance of counsel, do you agree that you get EDPA deference as to the prejudice prong, but not as to the deficiency prong? I agree that that's the standard in this circuit right now. I think there's some debate going on when there has been a merits review of a claim, whether they skip one component or not, there should be deference to both. But in this circuit right now, yes, it's deference only to the prejudice prong. That's correct. And I guess I'll... Can we go to the prejudice prong? Yes. I mean, there was a failure to call an alibi witness here, which, you know, at least on its face, seems like a pretty big deal in a case when the defense's theory is, you know, it wasn't me. You know, it's a question of identity. Why here is there no prejudice for not calling an alibi witness? Well, I think what the state court said is exactly right, although maybe they didn't get into the details, and I'll try to do that for you. The evidence at trial did not suggest that this crime occurred at a specific time. The only thing that suggested that maybe it occurred later, at 1230 or later, was the 911 call. But both of the neighbors, the critical witnesses here, testified that it was sometime after 11. So if we're trying to figure out the timing and whether the alibi witness would indeed really actually be an alibi witness, would it make sense to use, like, how the state court of appeals sets forth the facts and the timing? Yes. I think that you... Are you asking about their... Well, like, the state court of appeals gives us, you know, their version of the facts, right? And, you know, when everything happened and what the testimony is. I guess I'm saying I take your point that there's, you know, at trial, there may have been lots of different testimony about, you know, when things happened and inferences. You know, us as the court of appeals, I'm asking, should we take kind of the view of what happened from the state court of appeals? Yes, I think that's correct. And forgive me if I'm forgetting exactly what they said, but I believe what the state court said was that the witnesses testified that it was sometime after 11 or sometime after 1130. And, yes, those are facts that are presumed to be correct. And that's confirmed even by the trial court record. Yeah, so when I go through the timeline that the state court gives, right, it does say sometimes after 11, right? But then it actually gives me a pretty clear cut formula, right? It says sometimes after 11, Walker's neighbor, you know, here heard what she thought were firecrackers and saw what is Walker's car drive off seconds later, right? Correct. And then it gives this period of time all the way until the 911 call, right, which is 1248. Right. Okay, so I'm not, you know, I'm a lawyer. I'm not a mathematician here, but if we count back based on their timeline, this is the court of appeals and how it thinks the facts happened, right? So we're 1248 at the 911 call. It says that Mr. Reed waited a few minutes after seeing what happens to call. So I don't know if you want to knock off what's a few minutes, five minutes, eight minutes, or things like that. And it says that that happened 10 or 15 minutes kind of after they heard the firecrackers, what they thought were firecrackers and saw some of Walker's car drive off. So it seems to me like you're skimming off about 10 to 15 minutes plus a few minutes. That's like, what, 20 minutes, maybe 30 minutes that we can take off from the 911 call, which was at 1248. I mean, I'm just saying this is how the state court of appeals, which we're supposed to defer to, gives us a timeline. And I think it is a little bit vague, though, and, you know, a few minutes here, a few minutes there. And that's because that's how the testimony came in. Mr. Reed at several points said a few minutes, but then he wasn't clear on what a few minutes was because he said 10 to 15 minutes after he heard the shots at one point. But what is, and I take your point that that's how the state court described it, but what is in the record is that Mr. Reed says it was between 1130 and midnight. He was sure about that at one point. But then he also testified that, you know, it was just a little bit before he called 911, which is much later. So there's, you know, I think it's hard because there's testimony a little bit all over the place. But what I think is a little bit confusing to me is that the state court has put out this timeline, which itself suggests that the shots could have been fired, you know, after midnight. Sure. Right? But then it also says her testimony, this is the sister's testimony, would not have accounted for the defendants' whereabouts when the crimes were committed. And I guess, you know, we're supposed to obviously defer to the state court, but this seems quite inconsistent to me to say she couldn't have accounted for where he was. You know, she was all the way on the other side of town at, you know, 1230. They said, what, it takes, you know, 20 minutes to get there or something. And the timeline that the court itself gives me would make that, you know, quite frankly a very viable alibi witness. Again, I guess I don't see the specificness in the state court's opinion. I take your point that if you take away the few minutes here, a few minutes there, it doesn't seem like you're getting too far back. You're not getting to it. But a few minutes, I mean, that's pretty vague to me. That's not definitive. It's, you know, two or three minutes. And, again, if you look at the record, Mr. Reed was very definitive. He was inconsistent at some points, but when he was asked what time this could have occurred, he said between 1130 and midnight. And on cross-examination, when counsel asked him, well, and he went through exactly what you went through, Judge Bloomcast, and he said, well, doesn't that mean it must have occurred later at 1230? And his response was, no, I do not believe it was that late. So do we take, when we're doing our review then, do we take what, you know, could have happened vis-a-vis the trial transcript, or do we take how the state court interpreted it? Because the state court does not say, well, it's very clear that it happened or that Mr. Reed was very clear that it, you know, that it happened in this period. Instead it gives me this, you know, I take it that a few might be vague, but I don't think a few means 30 minutes. But is our review then just of the trial transcript and what could have happened in matching that up, or is our review of the state court judgment? Well, I think it's both. And, you know, the Supreme Court has said several times that we're not in the business of judging opinion writing of the state courts. And, yes, it was not a model of clarity. I would have liked them to explain what they meant by he wasn't, or the timeline at the end of the ineffective assistance claim. But that's not what we're doing. You know, we're not judging opinion writing. We're here to determine whether the claim and deciding that claim was unreasonable. And I think you can look at the record as well as the state court opinion. There is a series of events that you could align with the evidence that would make the sister's testimony not helpful in the sense that it wouldn't be an alibi because there's a sequence of events where he could have been home. He could have committed the crimes and been home by 1230, which is her testimony, right? Yes, that is. And I think so long as it's reasonable for jurors to view the evidence like that, to view the evidence as, well, the crime could have happened at 1130, at least the shooting and starting the fire could have happened at 1130 or midnight, as long as a reasonable juror can conclude that, I think you can say that the alibi testimony would not have made a difference. And just one more point on the ineffective assistance claim. Again, there's a strong presumption that what counsel did was reasonable. Sherry's affidavit says nothing that's helpful to overcome that presumption. All she does is say that I was expected to testify, I didn't testify. She doesn't explain why she was late. She doesn't explain whether she told the attorney that. There's nothing on the record to explain what he knew, and I don't think that's enough to overcome the presumption that he did what he thought was best for his case at that time with no witness. Had she changed her testimony at some point? There was two affidavits. One was executed before trial. That didn't provide much other than she said that I saw him at between 12 and 1230. And then after he was convicted on direct appeal, she signs an affidavit that says limits it or restricts it to 1230. I saw him at 1230. So, yes, she did change it. Are those the type of questions that get kind of resolved in a Ginther hearing? I'm sorry, could you repeat that? Those types of questions that you're raising, like, you know, what did the attorney know, why was she late, was she not coming, you know, all this stuff. Are those the types of things that typically get resolved in a Ginther hearing? I think they can, yes, but the problem is they don't even allege those facts here. Well, they asked for a Ginther hearing and they didn't get it. Right. They don't know the facts to allege because there was no hearing. But I think that's his burden to show those facts. By saying she would have provided an alibi, she would have been there, it's his burden to show I also, or that she, to explain why she wasn't there. Those are, I think, basic facts that go to, well, okay, now we'll have an evidentiary hearing, and he doesn't provide those facts. Okay, thank you very much. Thank you. Good morning, Your Honors. Before we begin, Steve Alanya from the Appellate Clinic at Wash U in St. Louis, and I'm pleased today to introduce the law student whom this court has granted leave to present argument on behalf of the appellee, Franklin Garrison, and that will be Mr. Finley Cobb. Thank you. Thank you. I hope this is not interfering with exams. That was my first question. Different prep, but it's been interesting, and I'm glad to be here. Thank you, Your Honors. Finley Cobb on behalf of Defendant Appellee Franklin Garrison. May it please the court. We ask this court to affirm the district court's grant on both grounds. First, the district court was correct under Jackson. The state failed to put forward evidence for a rational trier of fact to find guilt beyond a reasonable doubt, and the state court's holding to the contrary was unreasonable. The state didn't put on evidence that Mr. Garrison was there at the time of the crime, let alone that he participated in it, and at best, the state's evidence might have led the jury to speculate, but under this court's precedent, that's not enough. The state court's decision to the contrary was based on factual error and a failure to apply this court's precedent. And second, the district court was also correct under Strickland. An alibi witness was prepared to account for Mr. Garrison's location around the time the crime was committed, but trial counsel didn't put that testimony to the jury. Given the weak evidence and the attenuated timeline, that extra information would have made a huge difference. Can you talk about your friend on the other side just to explain? And listen, you can read the trial testimony to say that the shooting happened and the fire was set much earlier than the sister would have testified that he was at her house, right? And so how do you deal with that and the fact that in the record the timeline can be read quite frankly in many different ways? Yes, Your Honor. I take issue with that point for two reasons. First, AEDPA needs to be overcome, but it doesn't need to infect the analysis after it's been overcome. So on AEDPA, the state court made factual errors setting it after 11. That timing is not supported by the record. Second, under AEDPA- Hold on. Sorry, go ahead. I just want to stop right there. When you say that it's not supported by the record, maybe if you could tease that out and explain that a little bit. Yes, Your Honor. There simply is not evidence in the record indicating after 11 timeline, as in, you know, 1105, 1110. The state used that after 11 timing, which is highly prejudicial to Mr. Garrison. The record evidence at 1248, 911 call, fire marshal testimony indicating 20, 30 minutes before. And then, you know, the only thing in the entire record indicating after 11 is two words from one witness who said, this is a paraphrase, but I'm not sure what time it was, I think around 11. And the state court took those two words and ran with them. Well, should they be disregarded if it was from a witness? I get that it's equivocal. It's not definitive. But isn't that something that they could rely on, or at least the jury could rely on, a witness saying, I'm not exactly sure, but it was after 11? I think in context, the statement just doesn't serve to set the timeline, to put a pin in the timeline. The witness was simply saying, you know, I go to bed at 11. I think it was sometime after that. And regardless, there are other errors under AEDPA, and especially for the ineffective assistance claim, the treatment of the facts is completely inappropriate by the state court. And that goes to a legal error, really, rather than a factual error. Under Strickland, rather than Jackson, under Strickland, the evidence is not taken in the light most favorable of the prosecution, yet the state court, in setting the standard using this no substantial defense test, uses after 11 timeline, which we say is not even the facts in the light most favorable of the prosecution, it goes beyond them, and that's inappropriate under Strickland. Strickland requires the facts to be considered in a totality, rather than the light most favorable of the prosecution. So either way, AEDPA deference has been overcome, and the state never reached performance. They only tested prejudice, so the performance issue is on the merits before this court, without any deferential approach. Just to go to the Jackson claim very briefly, you know, three key principles undergird this court's treatment of Jackson. First, if presence hasn't been proven, the state hasn't made its case. Second, mere presence- I'm sorry, can I take you back to the IAC?  So what case, what's the clearly established case that you would rely on that shows that this was absolutely prejudicial and that we have- Your Honor, there are a few cases. The most notable one where this court specifically noted that a failure to request an adjournment was prejudicial was Upshaw in 2024. That's cited in the brief. It's, I believe, 97 fed forth. But in that case, this court affirmed this court's judgment and noted part of the ineffective assistance was the failure to request an adjournment, quote, to remedy the situation. So there is precedent for this sort of adjournment issue. Well, when you said part, I mean, that's the only, that's basically the only error here, right? Yes, Your Honor. In that case, there were other errors if that was only part of it. Yeah, and it's kind of an issue of characterization. Obviously, this court has a lot of case law on the failure to investigate issue, much less on, you know, counsel bringing the witness to the finish line and then just failing to take the very last steps. It's kind of a rare mistake. But I think that this issue could be treated analogously to a failure to investigate where- It seems quite different. I mean, it is, you know, not even looking into it, you don't know what the person is going to say. If you've looked into it, then you at least have the information. And so then it feels like more of a judgment call. There could be, you know, there could be circumstances where it's just no reasonable lawyer would ever decide to do that. But it feels a little bit different to me. It is certainly a bit different, and it's kind of just a rough analogy just to kind of get this into- I know, but in this world, rough analogies don't usually work, just given the high standard. I agree with that, Your Honor. And the issue here is that counsel, you know, to draw the analogy to the failure to investigate, counsel in failure to investigate claims didn't take the first step that they would have needed to make a strategic decision. Here, in order to make a strategic decision, counsel needed to speak with the witness on the day of the trial. Counsel did not do that, and that's affirmed by uncontested affidavit from Sheree Garrison. I know this is talked about in terms of adjournment, but, like, couldn't counsel have just asked for, like, a five-minute recess to call? I mean, we're in a cell phones era. Yes, Your Honor. Counsel needed to take very minimal steps. It didn't have to be anything, and this kind of gets to sort of some of the points that the state gestures at, like maybe counsel's being strategic by not wanting to alienate the jury or fear that the judge wouldn't have granted the adjournment and they would maybe be embarrassed or something like that. You know, this could have been done extremely briefly. The trial court specifically asked if his witnesses were there. Counsel stepped out of the courtroom and presumably checked, stepped back into the courtroom and said, yes, my witnesses are here or they are here. And in that context, it's clear that had counsel said, actually, my witnesses aren't here, can I take a second to ascertain their presence, it's extremely likely that would have been granted. Good cause, as the state says, you know, there's a kind of a good cause requirement for an adjournment. You know, a five-minute break because an alibi, because the entire defense, the defense's entire case is missing, doesn't seem to be difficult for the good cause analysis. What do you make of the fact, though, that at least as some of the argument went, that an alibi in this particular alibi wasn't really central to the defense? It wasn't something that was, you know, you know, it wasn't like in the intro or the opening, you're going to say you're going to hear from, you know, the sister that, you know, this, you know, that he was at her apartment or things like that. I mean, does that suggest that, you know, maybe counsel wasn't planning to call her and, hey, it would only take five minutes to check to see if she was around, but the call was, you know, it's not worth it and I wasn't going to do it? Your Honor, the counsel clearly intended to call her. I mean, he listed her as a witness, told her to arrive at the courtroom at 9 a.m., gave the jury sort of like the deep, the rundown on alibi witnesses during voir dire. All these facts indicate that counsel thought this was valuable testimony from Mr. Garrison and kind of first principles, you know, it's an alibi in a timeline case. It's an identity case and you have someone saying 12.30 and that seems to be, you know, just facially valuable for the defense. It seems that the only reason that Sheree Garrison wasn't called that day was because she was running late and counsel, you know, maybe thinking the case already won, maybe not wanting to embarrass himself in front of the judge, decided let's risk it. Strategy, though, is sort of a weighing of costs and benefits. There has to be some sort of benefit to be gained from foregoing this testimony and that simply can't be supplied and, you know, we think that that's apparent from the record itself. It doesn't need to come in through an evidentiary hearing. Do you think a Ginther hearing would elucidate some of those things? Certainly, it would have been helpful to have had a Ginther hearing. The state argued against it and the state court denied it and at this point, the affidavit testimony kind of supplies enough grounds to affirm the district court's decision. Is there even a possibility of, like, the district court doing a hearing now given Sims, given, I mean, I guess, anyways, I'll let you answer. Yeah, a pinholster and those cases indicate that, and this court also made some treatment of this issue in Upshaw recently, that once AEDPA has been overcome, there is potential for an evidentiary hearing in the federal courts still. I know it's much less common after pinholster, but it's still an option, especially where the state court denied that hearing. In Upshaw, on the other hand, there was an evidentiary hearing in the district court. This court then disregarded that hearing and found on the state court record. So it's kind of a mixed treatment, but the option is still there. Then what would be your preference? If we agreed with you that AEDPA has been overcome, what would be your preference? My preference is that this court decide on the merits and simply affirm the district court. The record is clear that no strategic sort of fill-in solution could be supplied. There are some potentially strategic reasons for counsel to forego an alibi witness. I think just listing a few of them kind of makes clear that that wasn't the case, and there was no really good strategic basis here. If the witness had been cumulative or if the witness were to supply an alibi that maybe contradicts something that the defendant's relying on. But here, neither of those things or none of the good strategic bases are available. There could be some. The counsel did meet with the sister, right? So he may have made a judgment that she wouldn't be especially credible witness for one reason or another. It was a sister, right? That's compared to testimony from neighbors, who I think would be more disinterested from the sister. She's also late, forever that would matter. It's not at all clear that it would have helped the case. So if she actually turns out to be somewhat unhelpful witness, wouldn't that unbalance actually hurt your client? Any of those things could be true, but they're not strategic bases. So the first issue you point out sort of whether the jury would have credited the sister as a witness. And clearly counsel believed that, yes, they would because he intended to call her. He listed her as a witness and told her to come to testify. So that seems to be strategically counsel believed that the testimony was valuable. And then sort of the other issues about whether the jury would have believed it, I mean, that goes to weight, which is really more on the prejudice prong. Strategically, it seems that the decision had been made, and it seems clear that counsel merely made a kind of spontaneous decision to just say, let's just finish this off. That's not strategic where the entire case rests on an alibi and no comparable evidence has been put before the jury. This is 1230. Regardless of the precise timing of the crime, there's clearly a lot of confusion around the timeline in this case. And a data point like 1230 could certainly have made a difference. And under Strickland, once we're past epidefference, which I think we clearly are here, once we're past epidefference, the standard is merely whether there's a substantial chance of a different outcome. Could counsel have been worried or the sister been worried that she was going to perjure herself? Because she did change her testimony somewhat materially, given the timeline here in her post-conviction statement. Your Honor, the first affidavit was given long before trial, and the second affidavit was, you know, was a timing that was worse for, as clarifying, but it was worse for Mr. Garrison. So given that circumstance, it doesn't seem that she would have perjured herself. And in other cases where this court has considered failure to call alibi witnesses, that's really not a consideration. It's what they would have said, whether trial counsel would have called them, are sort of the key considerations in cases like Upshaw recently. If trial counsel knows a witness is going to perjure themselves? No, if trial counsel knows that they're to perjure themselves, and I'll just be brief, then, of course, they may not call them as a witness. But where that fact is not apparent, this court has not read that into the record or assumed it to be true. If there are no further questions, for those reasons, we ask this court to affirm. Okay, thank you very much. Thank you. State can have its rebuttal. Thank you, Your Honor. I'll be very brief. I just want to touch on a couple points. I think Judge Blomkaster got into this. The fact that this, my friend says, the entire case rests on the alibi, I don't think that's true. You pointed out that there was nothing in opening statements about an alibi, about an alibi witness. And, in fact, counsel, in his opening statement, actually says something about the witnesses say it's around 1130 that this happens. He doesn't try to narrow down that timeline in the opening statement to then set the stones for an alibi witness. What he's doing is, throughout the whole case, is he's trying to attack the prosecution's case, attack the investigation, you know, the three teenage boys or young men that were at the scene, attack why there was no phone, more phone records for the Keelan Allen that was with Mr. Harrison at the scene. That was his strategy. His strategy was to try to undermine this case. It wasn't to put on an alibi, an affirmative defense in this case. And then I would point out that, again, my friend says that there was only two words, and the state court ran with it, after 11 or around 11 from Mrs. Reed. That was from Mrs. Reed. Mr. Reed, her son, Edward Reed, was much more clear. He specifically said that it was between 1130 and midnight, and then said, I don't think it was that late when asked if it could have been around 1230. So it's more clear, I think, than what they're suggesting. So he waited, like, over an hour to call 911? I don't know if it was over an hour, but, again, he – Well, if you're asking us to take the testimony that it happened, like, at 1130, that's over an hour before 1248. Yeah, 1130 is when he said that he heard the shots fired. He was talking with his girlfriend, he says. It was minutes after that that he heard people yelling outside, fire, fire. And he says at one time he's unclear as whether he knew what they were saying at first, and then he realizes, oh, they're saying fire. He looks out his window. He goes downstairs. He goes outside. He looks. He realizes, ah, I should probably get my shoes on. He goes back in. He goes to his mom's bedroom, talks to her for a little bit, goes back out, and then he says he starts filming, and he's very clear that he didn't know that there was a dead body there and he wasn't going to call 911 until he realized there was a dead body. So it could have been a decent period. Yes, that's the point I'm trying to make. Well, but don't we have the fire inspector saying that the point at which the fire had progressed by the time he got there was only about 20 minutes? So doesn't that confine us a little bit? So I tried to make this point in my reply brief. The fire investigator didn't actually say it was 20 or 30 minutes before I arrived. He said the fire would have taken 20 or 30 minutes to go from being lit to fully engulfed. He didn't say that it just became fully engulfed when I got there. In fact, I think he says that the fire was out or almost out when he got there. So it's not 20 or 30 minutes from when he got there. It's 20 or 30 minutes from when it became fully engulfed. And I think one of the witnesses said, yeah, it was fully engulfed before I called 911. So I don't think the fire investigator's testimony is indicative of the timing in this case. Okay, I think you used your time. I'm sorry? I think you used your time. Oh, yeah, I'm sorry. I just ask that this court reverse. Okay, thank you very much. Thank you. Appreciate the arguments from both sides. Well argued. And the case will be submitted.